**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| MARIA EMERSON and MARK EMERSON<br>Husband & Wife,<br><br>    Plaintiffs,<br><br>v.<br><br>NORTH IDAHO COLLEGE,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. CV 05-425-N-LMB

**ORDER**

Currently pending before the Court are Defendant's Motion for Summary Judgment (Docket No. 25, Att. 1), Defendant's Motion to Strike Portions of Plaintiffs' Statement of Undisputed Facts and Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment (Docket No. 31, Att. 1), and Defendant's Application for Order Granting Defendant's Motion to Strike (Docket No. 34). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Order.

**I.**

**BACKGROUND**

In the fall of 2003, Maria Emerson ("Emerson")[1] was enrolled in the nursing program at North Idaho College ("NIC" or "Defendant"). *First Emerson Declaration*, p. 1 (Docket No. 18).

---

[1] Although Mark Emerson is also listed as a Plaintiff, neither party has discussed in the briefing how the claims relate to him. At the October 17, 2006 hearing, Plaintiffs' counsel stated that Mr. Emerson's claims are derivative of Maria Emerson's claims. For ease of reference, the Court will discuss the claims only as they relate to Maria Emerson and will refer to Plaintiffs' claims collectively in the final section of this Order.

**ORDER -1-**

Emerson participated in a clinical course for the nursing program where she was evaluated on attendance, completion of assignments, and overall performance. *Id.* at pp. 1–2 (Docket No. 18); *id.* at Ex. A, pp. 1–2 (Docket No. 18, Att. 1). Jennifer Gabriel-Hickman ("Hickman") was Emerson's primary instructor. *Defendant's Statement of Undisputed Facts*, ¶ 1 (Docket No. 25, Att. 2); *Plaintiffs' Statement of Disputed Facts*, ¶ 1 (Docket No. 28). Manuelita "Lita" Burns ("Burns") is the director of NIC's nursing program. *Id.*

At the end of the 2003 semester, Burns and Hickman agreed that Emerson should be dismissed from the program. *Defendant's Statement of Undisputed Facts*, ¶ 12 (Docket No. 25, Att. 2); *Plaintiffs' Statement of Disputed Facts*, ¶ 12 (Docket No. 28). Burns reported that the dismissal was due to Emerson's failure to complete the requirements communicated to her in the clinical contract, as well as her contamination of the operating room ("OR") during her OR observation. *First Burns Affidavit*, ¶ 12 (Docket No. 25, Att. 4). *See also First Emerson Declaration*, Ex. A, p. 2 (Docket No. 18, Att. 1).

On May 31, 2005, Plaintiffs filed a Complaint in state court against Defendant, claiming that Emerson's dismissal was based on discrimination and that she was dismissed without proper procedure. *Complaint*, *Ex. A to Notice of Removal*, p. 6 (Docket No. 1). Specifically, Emerson claims that her dismissal from the program was the result of discrimination by Hickman based on Emerson's age, national origin, and a claimed hearing disability.

Defendant removed this action to federal court on October 5, 2005. *Notice of Removal* (Docket No. 1). Removal was based on 28 U.S.C. § 1331 and § 1343 for the constitutional claims and § 1441(c) for the remaining state claims. *Id*. at pp. 1–2. Once removed, Defendant filed a Motion to Dismiss the federal claims for a lack of subject matter jurisdiction. *Defendant's Motion to Dismiss* (Docket No. 13). The Court granted in part Defendant's Motion,

dismissing Plaintiffs' procedural due process claim.  The claims remaining are Plaintiffs' 42

U.S.C. § 1983 claims, a substantive due process claim, and several state law claims.

## II.

## MOTION TO STRIKE

Defendant has filed a Motion to Strike Portions of Plaintiffs' Statement of Undisputed

Facts and Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment.

(Docket No. 31, Att. 1) and an Application for Order Granting Defendant's Motion to Strike

(Docket No. 34).  Plaintiffs' response to the Motion to Strike was due on September 29, 2006

and, as of the October 17, 2006 hearing, no response had been filed.  For this reason alone, it

would be appropriate to grant Defendant's Motion to Strike.  *See* D. Idaho L. Civ. R. 7.1(e)

(providing that failure to respond to a Motion may be deemed "to constitute a consent to the . . .

granting of said Motion").  In addition, however, at the October 17, 2006 hearing, Plaintiffs'

counsel agreed that any facts in Plaintiffs' response brief and statement of facts that are not

contained in Emerson's declarations need not be considered by the Court in ruling on the

summary judgment Motion.

Moreover, good cause exists to grant the Motion to Strike.  Plaintiffs relied on numerous

facts in their Memorandum Opposing Motion for Summary Judgment (Docket No. 26) and

Statement of Disputed Facts (Docket No. 28) that were not submitted through declaration or

affidavit.  "To defeat summary judgment, the nonmoving party must show, *by affidavits or as*

*otherwise provided in Federal Rule of Civil Procedure 56*, that material issues of fact are in

dispute."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (emphasis added).

Accordingly, the following statements are stricken from Plaintiffs' Statement of Disputed Facts

because they are not contained in the record.

**ORDER -3-**

A. In paragraph 7: "EMERSON testifies that she was adequately grasping skills" taught in her NIC nursing class.

B. Also in paragraph 7: "The allegation of failing to compare lab tests with medication is simply disputed."

C. In paragraph 10: "EMERSON asserts she was able to perform skills."

D. In paragraph 11: "EMERSON asserts that she turned in the majority of her work, but was advised it was more important to complete clinical work."

E. In paragraph 19: "Gabriel-Hickman made remarks about hating to be confused for a hispanic."

Similar statements will be stricken from Plaintiffs' Memorandum Opposing Motion for Summary Judgment and will not be considered when ruling on the summary judgment Motion.

F. On page 2, paragraph 1.A.2: "EMERSON asserts she turned in all assignments, although some were late."

G. On page 3, paragraph 1.A.3: "Gabriel Hickman made comments that she did not like being identified as a Latino when she was in fact Armenian, and later said she 'couldn't stand' being identified as a Latino."

H. On page 4, paragraph 1.B: Gabriel-Hickman began to mention things in class about people trying to manipulate others and "victim mentality." On 9/5/03 Gabriel Hickman stated that she didn't have time to repeat herself. 9/10/03 made to stay after class for one hour without explanation. 9/29/03 had to sit behind Gabriel Hickman at nursing home at lecture and can't hear. Asks her to speak louder or for a copy of the instructions: she replies 'why? Nobody else needs one." When EMERSON complained that she couldn't hear Gabriel Hickman said, "I

**ORDER -4-**

don't have to make accommodations for you, if you can't hear me then move, or tell someone else to move."

## III.

## MOTION FOR SUMMARY JUDGMENT

**A.**     <u>**Standards of Law**</u>

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element that is essential to the party's case and upon which the party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the nonmoving party fails to make such a showing on any essential element of the party's case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323. *See also* Fed. R. Civ. P. 56(e).[2]

According to Rule 56, an issue must be both "material" and "genuine" to preclude entry of summary judgment. An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to

---

[2] Rule 56(e) states that, in responding to a motion for summary judgment,
> an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

**ORDER -5-**

require a jury or judge to resolve the parties' differing versions of the truth at trial," *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)), or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v*, 477 U.S. at 248.  The Ninth Circuit Court of Appeals cases are in accord.  *See, e.g., British Motor Car Distribs., Ltd. v. S.F. Auto. Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Moreover, all inferences must be drawn in the light most favorable to the nonmoving party.  *Id*. at 631.  That is, "if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied."  *Id*.

In order to withstand a Motion for summary judgment, a nonmoving party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distribs.*, 882 F.2d at 374 (citation omitted).  Moreover, where the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must "produce 'specific facts showing that there remains a genuine issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (citing *Ruffin v. County of L.A.*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

**ORDER -6-**

In recent years the Supreme Court, "by clarifying what the non-moving party must do to withstand a Motion for summary judgment, has increased the utility of summary judgment." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Therefore, "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id*. A material fact is

> one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the *substantive law* governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)) (emphasis added).

**B.      Plaintiffs' Claims**

Plaintiffs claim that NIC's decision to dismiss Emerson from the nursing program was discriminatory and therefore violated her civil rights. *Complaint*, *Ex. A to Notice of Removal*, pp. 5–6 (Docket No. 1). This claim implies a violation of the right to equal protection under the Fourteenth Amendment. Plaintiffs also claim that NIC's decision to dismiss Emerson violated her right to due process under the Fourteenth Amendment—at essence, a claim for lack of substantive due process. *Id*. at p. 6, ¶ 4.

To bring a claim under the Fourteenth Amendment, Plaintiffs must have a basis for a private remedy grounded on a legislative act of Congress. *United States v. Georgia.*, 126 S. Ct. 877, 881 (2006).[3] Plaintiffs have argued that they properly raised a 42 U.S.C. § 1983 claim,

---

[3] Section 5 of the Fourteenth Amendment grants Congress the power to create legislation which gives individuals private remedies against the State or state actors for violation of this amendment. *Id*. Though Plaintiffs did not mention this statute, or any other, in the Complaint, they are not necessarily precluded from relying upon or using this statute if the pleadings establish the essential elements of the claim. *See Bowers v. Campell*, 505 F.2d 1155,

(continued...)

*Plaintiffs' Memorandum Opposing Motion to Dismiss*, pp. 4–5 (Docket No. 17) (arguing that exhaustion is not required for § 1983 claims), and section 1983 provides a remedy for a Fourteenth Amendment violation.[4]

### 1.      Equal Protection

To establish a prima facie case for a § 1983 equal protection violation, Plaintiffs must show that the Defendant, acting under color of state law, discriminated against Emerson as a member of an identifiable class and that the discrimination was intentional.  *Flores v. Morgan*, 324 F.3d 1130, 1135 (9th Cir. 2003).  The Ninth Circuit Court of Appeals has explained that a plaintiff "must show either that the defendant[] intentionally discriminated or acted with deliberate indifference."  *Id.*  To survive summary judgment on the issue of motive then, Plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive."  *Id.* (citation and internal quotation marks omitted).

Several courts have applied Title VII's burden shifting analysis to § 1983 claims.  *See, e.g., Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 146 (2d Cir. 1999); *Causey v. Balog,* 162 F.3d 795, 804 (4th Cir. 1998); *Guseh v. North Carolina Cent. Univ.*, 423 F. Supp. 2d 550, 559 (M.D. N.C. 2005).  Under Title VII's framework, a plaintiff must first satisfy the minimal burden of making out a prima facie case of discrimination; the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions; and the final burden

---

[3](...continued)
1155 n.2 & 1157 (9th Cir. 1974) (declining to require a claimant to specifically cite § 1981 to state a claim, especially because respondents were fully aware of her reliance on that section before summary judgment motions were filed).

[4]  In cases involving Fourteenth Amendment claims in the educational setting, § 1983 is an appropriate and commonly used statute given that it "provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States."  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002).

ORDER -8-

rests with the plaintiff to prove that, despite the proffered nondiscriminatory reason, the defendant intentionally discriminated against the plaintiff. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000).

### a.  Age Discrimination

At the October 17, 2006 hearing, Plaintiffs' counsel acknowledged that Emerson cannot assert an age discrimination claim because there were older students who successfully completed the nursing program. *See also Second Burns Affidavit* (Docket No. 29, Att. 2) (providing information on other older students in the program). Based on this acknowledgment, and because Plaintiffs have not provided any argument in their opposing memorandum to explain why this claim should survive summary judgment, Plaintiffs' age discrimination claim will be dismissed.

### b.  Disability Discrimination

Emerson reports that she lost most of the hearing in her right ear when she was about twelve years old due to repetitive ear infections. *Defendant's Statement of Undisputed Facts*, ¶ 2 (Docket No. 25, Att. 2); *Plaintiffs' Statement of Disputed Facts*, ¶ 2 (Docket No. 28). Under a Title VII analysis, a person claiming discrimination based on a disability must prove that she is "disabled within the meaning of the ADA" as the first requirement of her prima facie case. *Weigel v. Target Stores*, 122 F.3d 461, 465 (7th Cir. 1997). Thus, Plaintiffs bear the burden of demonstrating that Emerson—based on her claimed hearing problem—is a qualified individual with a disability. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996).

The Supreme Court has explained that "a disability exists only where an impairment substantially limits a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment

**ORDER -9-**

is corrected by medication or other measures does not have an impairment that presently

'substantially limits' a major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471,

482–83 (1999) (discussing the definition of "disability" under the Americans with Disabilities

Act).  Additionally, the effect of "measures to correct for, or mitigate, a physical or mental

impairment . . . must be taken into account when judging whether that person is 'substantially

limited' in a major life activity and thus disabled under the ADA." *Id.* at 482.

Applying these principles, Emerson has not demonstrated that her alleged hearing

impairment substantially limits a major life activity because she did not seek to have her hearing

problem diagnosed or treated or take any measures to mitigate her claimed hearing problem,

including the measures suggested by both Hickman and Burns.  The record establishes that

Emerson communicated to Hickman and Burns that she was having trouble hearing in class.

*Defendant's Statement of Undisputed Facts*, ¶¶ 3-4 (Docket No. 25, Att. 2); *Plaintiffs' Statement*

*of Disputed Facts*, ¶¶ 3-4 (Docket No. 28).  Plaintiff argues that Hickman addressed her concern

by recommending that she be evaluated.  Although Emerson testified that she did not initially

understand what Hickman meant, Hickman later clarified to Emerson that she meant Emerson

should have her hearing evaluated.  *Defendant's Statement of Undisputed Facts*, ¶ 3 (Docket No.

25, Att. 2); *Plaintiffs' Statement of Disputed Facts*, ¶ 3 (Docket No. 28).  Hickman further

instructed Emerson to sit wherever she needed to in order to hear the class instruction.  *Id.*

When Emerson raised her hearing difficulty with Burns during a November 6, 2003

meeting, Burns also recommended that Emerson have her hearing checked.  *Defendant's*

*Statement of Undisputed Facts*, ¶ 6 (Docket No. 25, Att. 2); *Plaintiffs' Statement of Disputed*

*Facts*, ¶ 6 (Docket No. 28); *First Burns Affidavit*, Ex. B, p. 3 (Docket No. 25, Att. 4).  Burns

emphasized how important hearing was to a nurse, and that Emerson needed to do whatever was

**ORDER -10-**

necessary to ensure that she could hear properly.  *Id.*  Emerson, however, never had her hearing checked while enrolled in NIC's nursing program, nor did she ever visit NIC's disability support services while she was a student in the nursing program, as recommended by both Hickman and Burns.  *Defendant's Statement of Undisputed Facts*, ¶ 4 (Docket No. 25, Att. 2); *Plaintiffs' Statement of Disputed Facts*, ¶ 4 (Docket No. 28).  Emerson explains that she did not follow the recommendations to go to the disability office because she did not feel she needed to go. *Castleton Affidavit*, Ex. A, p. 43 (Docket No. 25, Att. 6).  It was only after she was dismissed from the nursing program that she consulted disability services.  *Id.* at p. 94.

The record establishes that from age 12 through the time when she was dismissed from the NIC nursing program, Emerson did not have a doctor evaluate her hearing or seek to determine whether an amplification device could improve her hearing, *Defendant's Statement of Undisputed Facts*, ¶ 2 (Docket No. 25, Att. 2); *Plaintiffs' Statement of Disputed Facts*, ¶ 2 (Docket No. 28), and Emerson does not believe that she needs a hearing aid, *Castleton Affidavit*, Ex. A, p. 53 (Docket No. 25, Att. 6).  Because Emerson did not take any action to have her hearing evaluated and tested and/or to consult NIC's disability services for assistance, she has not demonstrated that she was a person with a qualifying disability at the time she was dismissed from the nursing program.  Accordingly, her equal protection claim based on alleged disability discrimination will be dismissed.

### c.    National Origin

Emerson was born in Argentina.  *Castleton Affidavit*, Ex. A, p. 62 (Docket No. 25, Att. 6).  The primary admissible evidence proffered by Emerson regarding her national origin discrimination claim is found in the affidavit of opposing counsel, which contains portions of Emerson's deposition.  *See id.*  Emerson testified at her deposition that she believed Hickman

was discriminating against her based on Emerson's South American origin because Hickman began to be "unfavorable" in her paperwork after learning Emerson could speak Spanish.  The only example Emerson provided for the record, however, is that after Hickman learned of Emerson's origin she stopped putting "good" and "happy faces" on Emerson's papers.  *Id.* at pp. 96–97.  Emerson also stated in her Second Declaration that Hickman regularly ridiculed her before other students and "shoved papers and books into [Emerson's] chest when [Emerson] turned in assignments."  *Second Emerson Declaration*, p. 4 (Docket No. 27).

Significantly, however, Emerson indicated at her deposition that Hickman treated her in a "hostile" manner even before she learned of Emerson's nationality and ability to speak Spanish.  *Castleton Affidavit*, Ex. A, p. 60 (Docket No. 25, Att. 6).  In fact, Emerson stated that "right from the beginning," during the first week of classes, Hickman told Emerson she would not be finishing the course.  *Id.* at p. 58.  Because Hickman's treatment of Emerson was similar before and after Hickman learned of Emerson's national origin, and because Emerson's claim that Hickman stopped putting happy faces on her papers does not amount to specific "factual allegations that establish improper motive," *Flores*, 324 F.3d at 1135, Plaintiffs have not established the existence of an element essential to their case and upon which they will bear the burden of proof at trial, *Celotex*, 477 U.S. at 322.  In sum, Plaintiffs have not submitted more than a scintilla of evidence to provide a basis for their national origin discrimination claim.  Accordingly, this claim will be dismissed.

### d.    Conclusion on Equal Protection

In summary, the record as a whole does not contain sufficient evidence for a jury to find that Defendant NIC acted with an unconstitutional, discriminatory motive.  *See Bingham v. City of Manhattan Beach*, 341 F.3d 939, 949 (9th Cir. 2003) (explaining that a plaintiff must produce

**ORDER -12-**

evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was motived by discrimination).  Because this is an essential element of Plaintiffs' equal protection claim and one for which they bear the burden of proof, summary judgment in favor of Defendant on this claim is appropriate.

Even assuming Emerson had met her prima facie case, under the Title VII analysis and as explained below in the section on substantive due process, NIC has met its burden of producing evidence that it had legitimate, nondiscriminatory reasons for terminating Emerson from the program.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993).  Accordingly, any presumption of unlawful discrimination in Emerson's prima facie case "'simply drops out of the picture,' and [Emerson] bears the ultimate burden of persuading the court that the stated reason for [her dismissal] was false and the true reason . . . was unlawful [] discrimination."  *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (citation omitted).

As explained below, there is no genuine issue of material fact regarding whether Defendant's stated reasons for dismissal were mere pretext.[5]  Significantly, Emerson testified that the only individual at NIC who she believes discriminated against her was Hickman, *see Castleton Affidavit*, Ex. A, p. 108 (Docket No. 25, Att. 6), but the record is clear that other individuals were involved in the decision to dismiss Emerson from the nursing program.  The evidence now in the record is not sufficient for a reasonable jury to find that, despite Defendant's proffered reasons and arguments, her dismissal from the nursing program actually represented intentional discrimination *by NIC* on the basis of Emerson's national origin or claimed disability.

---

[5]  Indeed, there is much evidence to the contrary.  *See Burns Second Affidavit* (Docket No. 29, Att. 1); *Burns Affidavit* (Docket No. 25, Att. 4).

2.        **Substantive Due Process**

Plaintiffs claim that Emerson's dismissal from NIC's nursing program violated her right

to due process.  When reviewing this claim, the Court has considered that it "should show great

respect for the faculty's professional judgment" because the dismissal is an academic decision

and "[u]niversity faculties must have the widest range of discretion in making judgments as to

the academic performance of students and their entitlement to promotion or graduation."

*Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 & 228 n.11 (1985).  As the Supreme

Court has explained, the Court "may not override [an academic decision on a substantive due

process basis] unless it is such a substantial departure from accepted academic norms as to

demonstrate that the person or committee responsible did not actually exercise professional

judgment."  *Id.* at 225.  It is not a violation of a student's substantive due process rights to

dismiss the student from an academic program if the decision to dismiss "rested on an academic

judgment that is not beyond the pale of reasoned academic decision-making when viewed

against the background of [the student's] entire career."  *Id.* at 227-28.

The affidavits submitted by Hickman and Burns detail Emerson's academic progress, or

lack thereof, and the problems she experienced in the program.  *First Burns Affidavit* (Docket

No. 25, Att. 4); *Second Burns Affidavit* (Docket No. 29, Att. 2); *Hickman Affidavit* (Docket No.

25, Att. 5).  Emerson asserted in her Statement of Facts that she had grasped and was able to

perform the necessary skills but, as explained above in the Court's ruling on the Motion to

Strike, these assertions were not made in an affidavit or declaration and cannot be considered by

the Court as evidence opposing summary judgment.  *See Plaintiffs' Statement of Disputed Facts*,

p. 2 (Docket No. 28).  Thus, the primary evidence in the record supporting Emerson's claim that

she performed to legitimate expectations is that she turned in 95 percent of her clinical

worksheets and passed all of her clinical skills except her nasal-gastric skills. *See Memorandum Opposing Motion for Summary Judgment*, p. 3 (Docket No. 26).

On the other hand, Emerson acknowledges that she turned in some of her assignments late. *Second Emerson Declaration*, p. 2 (Docket No. 27). Additionally, the nasal-gastric skills test that Emerson failed to pass was a "major skills" test that is required during the first semester.[6] *Second Burns Affidavit*, ¶ 11 (Docket No. 29, Att. 2). Even if there is some issue of fact as to why Emerson did not complete the nasal-gastric skills or turn in her assignments on time, NIC has detailed other reasons why Emerson was dismissed from the program.[7] Also significant is Emerson's contamination of a sterile area when visiting the OR. Emerson does not recall contaminating the OR, but argues that even if she did enter an area without the proper preparations, it was "merely a hallway outside an operating room." *Second Emerson Declaration*, p. 3 (Docket No. 27). At the October 17, 2006 hearing, Plaintiffs' counsel acknowledged that Emerson does not deny that the hallway is a sterile area, but argued that she was not told that it was a sterile area. However, these statements and arguments fail to address the evidence provided by Defendant that Emerson did contaminate the OR, as demonstrated by the report written by NIC instructor Marti Stow[8], and that the hallway at issue is "clearly a restricted area where the doors

---

[6] Emerson was scheduled to complete this skills test on four occasions, was absent for the first test, and did not complete it on the other three scheduled times for various reasons. *Hickman Affidavit*, ¶¶ 4, 6, 8, 14 (Docket No. 25, Att. 5).

[7] Emerson also does not specifically refute some of Defendant's assertions regarding her performance, such as that she failed to compare lab tests with medication precautions. She also acknowledges that she failed to do a clinical preparation and that she did not report a patient who might have been trying to expose himself to her. *Second Emerson Declaration*, pp. 2–3 (Docket No. 27).

[8] It is notable that Emerson asserts only Hickman engaged in discriminatory activities, yet Hickman had nothing to do with the OR incident, or the reporting of this incident to Burns, and it was Burns' decision to dismiss Emerson from the nursing program, in part, based on Emerson's performance in the OR. *Second Burns Affidavit*, ¶ 7 (Docket No. 29, Att. 2).

**ORDER -15-**

are marked in bold black lettering and the floor is marked off with red tape indicating that this area

is restricted to only those individuals wearing 'proper attire.'"   *Defendant's Statement of*

*Undisputed Facts*, ¶ 9; *Second Burns Affidavit*, ¶ ¶ 3B, 7, 10, & Ex. F (Docket No. 29, Att. 2).

       Thus, regardless of Emerson's reasons for contaminating the OR and for not completing

some of the course requirements, the record supports Defendant's position that she failed to meet

safety and other course requirements.   The faculty at NIC had previously notified Emerson that she

must meet these requirements to pass the course.   *See First Burns Affidavit*, ¶ 5 (identifying areas

of concern in Emerson's performance), ¶ 9 (stating that the concerns listed in Emerson's clinical

contract "were valid issues representing shortcomings in [Emerson's] performance that needed to

be corrected"), ¶ 11 (detailing course requirements Emerson failed to successfully meet), & Ex. C

(Emerson's interim evaluation) (Docket No. 25, Att. 4).   In addition, Defendant has provided

evidence that the OR contamination was a matter it took seriously because a failure to address

incidents such as Emerson's contamination of the OR could negatively impact its relationship with

Kootenai Medical Center and, thus, NIC's ability to provide clinical experience to students.

*Second Burns Affidavit*, ¶ 4 (Docket No. 29, Att. 2).

       In summary, Emerson has not placed into the record more than a scintilla of evidence to

demonstrate that Defendant's decision to dismiss her from the program represents the type of

substantial departure from accepted academic norms that may serve as a basis for a substantive due

process violation.   Moreover, the Sixth Circuit has held that in the absence of an equal protection

violation there is "no basis for finding that a medical student's interest in continuing her medical

school education is protected by substantive due process."   *Bell v. Ohio State Univ.,* 351 F.3d 240,

251 (6th Cir. 2003).   Because Plaintiffs have failed to demonstrate an equal protection violation,

there is no basis for their substantive due process claim and it will be dismissed.

**ORDER -16-**

### 3.     State Law Claims

#### a.     Negligent Hiring

In order to make a showing on a claim for negligent hiring of Hickman sufficient to withstand a Motion for summary judgment, Emerson must show that (1) NIC had a duty to her, (2) NIC breached that duty by failing to properly screen Hickman for her position, (3) NIC's failure to properly screen Hickman caused harm to Emerson, and (4) Emerson has suffered damages as a result. *O'Guin v. Bingham County*, 142 Idaho 49, 52,122 P.3d 308, 311 (2005) (elements of common law negligence); *see also Doe v. Garcia*, 131 Idaho 578, 961 P.2d 1181 (1998) abrogated in part by *Hunter v. State Dep't of Corr.*, 138 Idaho 44, 50, 57 P.3d 755, 761 (2002) (claim of negligent hiring).

As explained above, Emerson has failed to provide sufficient evidence into the record to demonstrate that her dismissal from NIC's program was based on a discriminatory motive. Accordingly, Plaintiffs' claim of negligent hiring fails because there has been no demonstration of causation and damages related to any claimed discrimination.  Moreover, Emerson has not presented facts sufficient to establish her burden of proving that there was something about Hickman that NIC could have discovered prior to hiring her and that, if they had discovered it, should have prevented them from hiring her.  The only information Emerson mentioned at her deposition to support her negligent hiring claim is that "[s]omeone mentioned that [Hickman] wasn't truthful about her background" and Emerson referred to this as "hearsay" information. *Castleton Affidavit*, Ex. A, p. 159 (Docket No. 25, Att. 6).  She made no additional allegations or statement of facts in her declarations, nor did she provide any argument in her Memorandum Opposing Summary Judgment to support this claim.  Hickman's report of what some unknown

person mentioned about Hickman is simply not enough to go forward with a negligent hiring claim and, thus, this claim will be dismissed.

      **b.**      **Defamation**

The elements for defamation are set forth in the Restatement of Torts, Second, § 558. Defamation requires: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Emerson's Complaint fails to identify what allegedly defamatory statements were made by Hickman, when and where those statements were made, and to whom.  Instead, it simply states that "Jennifer Gabriel-Hickman committed acts of defamation" against Emerson.  Moreover, Plaintiffs' Memorandum Opposing Summary Judgment simply states that they do "not have additional evidence to support this claim."  *Plaintiffs' Memorandum Opposing Summary Judgment*, p. 5 (Docket No. 26).  Because Emerson has failed to adequately plead her defamation claim and, most importantly, she failed to provide any factual information in her declarations about the specific manner in which Hickman allegedly defamed Emerson, this claim will be dismissed. *See, e.g., Classic Comm. v. Rural Telephone Servs.*, 956 F. Supp. 910, 920 (D. Kan. 1997); *Nat'l Bowl-O-Mat Corp. v. Brunswick Corp.*, 264 F. Supp. 221 (D.N.J. 1967); Charles Wright & Arthur Miller, 5A *Federal Practice and Procedure* § 1357, p. 359.

      **c.**      **Negligent Infliction of Emotional Distress**

For reasons stated above, Emerson has not demonstrated any actionable discrimination by NIC.  For this reason alone, Plaintiffs' claim of negligent infliction of emotional distress fails because there are no facts submitted into the record and further there is no causation related to the

**ORDER -18-**

claimed discrimination.  Plaintiffs' claim fails because a necessary element of a negligent infliction of emotional distress claim is that Emerson have suffered a "physical manifestation of an injury caused by the negligently inflicted emotional distress."  *Cook v. Skyline Corp.*, 135 Idaho 26, 35, 13 P.3d 857, 866 (2000) (citation and internal quotation marks omitted).  There must be evidence or proof of an actual physical manifestation of injury.  *Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 219, 923 P.2d 456, 464 (1996).  Emerson has made no such allegations in her declarations and there is nothing in the record to establish any physical manifestation of an injury. Thus, her claim will be dismissed.[9]

### d.    Emerson's Claim of Negligence Against Hickman

Emerson claims that "Jennifer Gabriel-Hickman was acting within the scope of her employment when she committed acts of negligence for which Defendant is vicariously responsible."  *Complaint*, *Ex. A to Notice of Removal*, ¶ VI.B (Docket No. 1).  Plaintiffs have not explained what actions in the record were committed by Hickman and how these actions amounted to negligence.  They argue only—in response to Defendant's claim that they did not receive adequate notice of a tort claim pursuant to Idaho Code Section 6-907—that a negligent supervision claim should remain before the Court.  *Memorandum Opposing Summary Judgment*, p. 6 (Docket No. 26).

It is well established that "[a] negligent supervision claim is based upon the employer's own negligence in failing to exercise due care to protect third parties from the foreseeable tortious

---

[9]  Although in Idaho state court a lay person may testify to causes of medical symptoms or injuries, *Dodge-Farrar v. Am. Cleaning Servs.*, 137 Idaho 838, 842, 54 P.3d 954, 958 (Ct. App. 2002), the only claim that Emerson makes—and it is in a memorandum and not a declaration or affidavit—is that "depression and having to stay at home do comprise physical manifestations."  *Memorandum in Opposition to Motion for Summary Judgment*, p. 6 (Docket No. 26).  She also argues in her memorandum that physical symptoms such as loss of sleep, anxiety, and irritability could comprise sufficient physical manifestations of emotional trauma to support a claim of negligent infliction of emotional distress, but she has not claimed that she suffered from these symptoms.  *Id.*

acts of an employee." *Mallonee v. State*, 139 Idaho 615, 622, 84 P.3d 551, 558 (2004). Because

Emerson has not demonstrated that any NIC employee committed a tortious act, she cannot

establish a case for negligent supervision. Moreover, Emerson never reported to any of Hickman's

supervisors that she thought Hickman was discriminating against her based on her age, national

origin, or a disability. *First Burns Affidavit* (Docket 25, Att. 4); *Castleton Affidavit*, Ex. A, pp. 98-

99 (Docket No. 25, Att. 6). Thus, she has not presented any evidence of a failure by NIC to

exercise due care.

Because Plaintiffs have failed to provide evidence to support a claim of genuine issues of

material fact in relation to elements of their state law claims, these claims will also be dismissed.

Inasmuch as Mark Emerson's claims are acknowledged to be derivative of Maria

Emerson's claims, his claims are also dismissed.


# IV.

## ORDER

In accordance with the foregoing, IT IS HEREBY ORDERED:

1.     Defendant's Motion for Summary Judgment (Docket No. 25, Att. 1) is GRANTED

       and this case DISMISSED in its entirety with prejudice.

2.     Defendant's Motion to Strike Portions of Plaintiffs' Statement of Undisputed Facts

       and Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary

       Judgment (Docket No. 31, Att. 1) is GRANTED.

3.      Defendant's Application for Order Granting Defendant's Motion to Strike (Docket

        No. 34) is GRANTED.



DATED:  **November 8, 2006**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**ORDER -21-**